### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| EDEN FOODS, INC.<br>a Michigan corporation,<br><br>                    Plaintiff,<br><br>    v.<br><br>JOHN DOE D/B/A EDEN SALT,<br>an unknown individual or entity,<br><br>                  Defendant. | :<br>:<br>:<br>:<br>:<br>:<br>:  C. A. No. 1:22-cv-00409-RGA<br>:<br>:<br>: |

### MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION
### TO CONDUCT LIMITED, EXPEDITED DISCOVERY

Pursuant to the Local Rules of this Court and Federal Rules of Civil Procedure 26(d)(1) and 26(f), as well as the federal discovery rules, Plaintiff Eden Foods, Inc. (hereinafter "Plaintiff" or "Eden Foods"), moves this Court to expedite limited discovery for the purpose of identifying the proper defendant and related service information, and in support thereof states as follows:

### I.    INTRODUCTION

Plaintiff Eden Foods is a leading producer of natural and organic food and beverage products and dietary supplements, all marketed under a protected family of EDEN trademarks that are registered with the United States Patent and Trademark Office. Plaintiff Eden Foods brings the present trademark infringement suit (the "Litigation") against John Doe d/b/a Eden Salt ("Defendant(s)"), asserting claims for trademark infringement, unfair competition, and trade name infringement and seeking, among other things, to enjoin Defendant(s) from using the trademark EDEN SALT. John Doe is a fictitious name intended to represent the entity(ies) or individual(s) whose actual identities are not currently known to Plaintiff.

1

As set forth in more detail below, prior to the commencement of this case, Plaintiff made repeated attempts to determine the identity of John Doe but was unable to do so.  As a result, Eden Foods is unable to fully identify the defendant in the Complaint ("Compl.").  Accordingly, Plaintiff files the present Motion seeking limited, expedited discovery focused upon revealing the entities or individuals operating Eden Salt so that the proper defendant(s) can be named in this case.

## II.   FACTUAL BACKGROUND

### A. The Dispute

Eden Foods produces and distributes natural and organic food and beverage goods, including seasonings and salt specifically, as well as related products and services.  Compl. ¶ 7.  Eden Foods adopted and commenced use of EDEN as a trademark in the 1960s and has used the name continuously and without interruption to the present day, currently offering over 300 products under the EDEN name.  *Id.* EDEN brand products are available throughout the United States through virtually every kind of food merchandising outlet, including national and regional supermarket chains, local grocery stores, food cooperatives, health food stores, convenience stores and department stores.  *Id.* ¶ 10.  Eden Foods' products also are available through mail order outlets and via the Internet, including through Eden Foods' website found at <edenfoods.com>.  *Id.*  Plaintiff and its EDEN brand products are well known and award winning.  *Id.* ¶ 8.

In January of 2022, Eden Foods became aware of Eden Salt's use of the mark EDEN SALT to market salt products, and its application to register the same as a federal trademark (App. Ser. No. 97/215,893).  Eden Salt appears to operate a web site at (www.edensalt.com) through which salt products can be purchased.  Eden Salt's use and attempted registration of EDEN SALT in association with salt products is likely to cause consumer confusion with and infringes Eden

Foods' protected family of EDEN trademarks. Plaintiff commenced the Litigation seeking relief from the Court to protect its valuable intellectual property.

### B. Eden Foods' Efforts to Identify the Proper Defendant(s)

Despite significant efforts aimed at identifying the proper defendant(s), Eden Foods has been unable to identify the entities or individuals operating Eden Salt.

*First,* Eden Foods investigated available online information, as well as the corporate records in the jurisdictions associated with Eden Salt, in an effort to identify a registered agent and/or officers and directors. Eden Salt's trademark application stated that Eden Salt is an LLC formed under the laws of New York, yet Plaintiff has been unable to identify any Eden Salt entity in New York other than a corporation that dissolved itself several years earlier. On information and belief, "Eden Salt" is a fictitious name under which Defendant(s) do business.

The trademark application also identifies an address (501 Silverside Rd. Wilmington, Delaware 19809) that appears to be a "virtual office" providing primarily mail forwarding services. The trademark application was signed by Mr. Earl George, but Plaintiff has been unable to locate a physical address for Mr. George.

Nor does Eden Salt's web site provide any helpful information. The web site identifies an entity referred to as "Eden Salt Inc." and provides the same Wilmington, Delaware address noted above. The Delaware corporation records do not reflect a Delaware entity with this name. Based on the foregoing, the John Doe defendant(s) do not appear to have properly registered in those states in which they purport to transact business, hindering the ability of parties like Plaintiff from identifying information needed for service of process.

*Second,* Eden Foods sent two letters to Andrea Selkregg, the attorney that represents Eden Salt in the trademark application, requesting that she provide the identity of her client

3

(Exhs. 1 and 2).[1]  Ms. Selkregg indicated that she had forwarded the correspondence to "the applicant" but otherwise declined to respond to Plaintiff's requests for information.

*Third,* on March 14, 2022, counsel for Plaintiff called the telephone number listed on the edensalt.com website (516-499-9427) in an effort to obtain additional information concerning Eden Salt's officers and directors.  The person who answered the phone refused to identify himself other than as "President" of Eden Salt.  He indicated that Eden Salt was represented by counsel and promised to call back later that day with counsel's contact information.  To date, Plaintiff's counsel has not received a return call.  The number itself is believed to be a VOiP number that cannot be traced.

Based on the foregoing, Eden Salt appears to be actively seeking to conceal the true identity of the entities or individuals operating Eden Salt.  As a result, Plaintiff Eden Foods is forced to seek relief from the Court so that this Litigation can proceed on the merits.[2]

### C.  Eden Foods' Proposed Discovery Requests

Eden Foods seeks approval to serve limited, narrowly-tailored document requests to each of the following third parties (Third-Parties), as set forth below, with responses due within 14 days of service:

1. **IdeaLegal, LLC and/or Andrea Selkregg (counsel to Eden Salt for trademark application)**

---

[1] Exhibits 1 and 2 are Exhibits C and D to the Complaint, respectively.

[2] On April 1, 2022, Plaintiff served the Complaint at the 501 Silverside Road address in Wilmington, Delaware, Eden Salt's only known address.  Service was accepted by Ms. Ashley Rigano, who is believed to be employed by Ferm Management Company.  The New Castle County Real Estate Parcel database shows that 501 Silverside Road is owned by Ferm Enterprises 501 LP.

- Documents sufficient to show the names and contact information (including residence address(es)) associated with Eden Salt that hired the attorneys to file the Eden Salt trademark application.

2. **eNom Inc. (Domain Name Registrar for edensalt.com)**

- Documents sufficient to show names and contact information (including residence address(es)) of the persons or entities that own, operate and/or control the web site edensalt.com that advertises salt for sale under the Eden Salt trademark.

3. **The Owner of and/or Manager(s) that provide virtual office services at 501 Silverside Road, Wilmington, Delaware 19809 (which is presently believed to be Ferm Associates, Davinci Virtual, and/or Alliance Virtual)**

- Documents sufficient to show the names and contact information (including residence address(es)) of the person(s) or entities that leased or otherwise contracted to access the private mailbox, PMB # 371, associated with 501 Silverside Rd. Wilmington, Delaware 19809, which is identified to the public as the business address for Eden Salt.

- Documents sufficient to show the forwarding address for mail received in connection with private mailbox, PMB # 371, associated with 501 Silverside Rd. Wilmington, Delaware 19809.

### III. ARGUMENT AND AUTHORITIES

**A. *The Federal Rules Entrust the Court With Discretion to Grant Requests to Conduct Discovery at an Early Stage of Litigation Before the Parties Meet for Purposes of Formulating a Discovery Plan***

Pursuant to Rule 26(d), a party may not seek discovery from any source before the parties have conferred as required by Rule 26(f). Fed. R. Civ. P. 26(d). "Courts, however, have broad discretion to manage the discovery process, and can expedite or otherwise alter the timing and sequence of discovery." *Vision Films, Inc. v. John Does 1-24,* 2013 WL 1163988 *2 (D. Del. 2013). *See also* Fed. R. Civ. P. 26(d)(1).

**B. *The Majority of Courts Apply a Good Cause Standard to Requests for Pre-Rule 26(f) Discovery.***

The Federal Rules of Civil Procedure offer little guidance as to when expedited discovery is appropriate. "Although the United States Court of Appeals for the Third Circuit has not adopted a standard for evaluating such requests, this Court has previously held that a 'good cause' standard should apply—one requiring the party seeking discovery to demonstrate that its request is 'reasonable' in light of the relevant circumstances." *Reybold Grp. of Companies, Inc. v. Does 1-20*, 323 F.R.D. 205, 208 (D. Del. Sept. 29, 2017). "Under the reasonableness standard 'the court must weigh the need for discovery at an early juncture in the litigation against the breadth of the discovery requests and the prejudice to the responding party, by considering such factors as (1) the timing and context of the discovery requests; (2) the scope and purpose of those requests; and (3) the nature of the burden to the respondent.'" *Id.* (internal citation omitted).[3]

In cases where expedited discovery is sought in order to identify unknown or anonymous John Doe defendants, this Court and others have evaluated whether "good cause" exists such that discovery should be permitted by "first asking whether the plaintiff has established a *prima facie* case for each essential element of the claim(s) in question." *Id.* Upon finding that a prima facie showing has been made, courts evaluate "whether the plaintiff has demonstrated: (1) that it has no other way to identify the alleged wrongdoers, aside from obtaining the discovery at issue; or (2) that expedited discovery is necessary because evidence identifying the defendants may be otherwise destroyed (e.g., as a result of routine deletion by third party ISPs [Internet Service

---

[3] A minority of courts utilize a standard initially set forth by the U.S. District Court for the Southern District of New York in *Notaro v. Koch,* 95 F.R.D. 403 (S.D.N.Y.1982), which "analyzes the expedited discovery request using factors similar to those used for injunctive relief or specific performance." *Vision Films, Inc. v. John Does 1-24,* 2013 WL 1163988 *2. However, as noted by the *Vision Films* court, "[i]n prior decisions involving motions for expedited discovery, this court has utilized only the reasonableness standard." *Id.* Accordingly, Plaintiff proceeds here using the reasonableness standard.

Providers])." *Id.* Upon making these showings, good cause is generally found to exist. *Id.* at 209. Courts routinely permit expedited discovery to identify Doe defendants prior to a Rule 26(f) conference. *See e.g., Vision Films, Inc. v. John Does 1-24,* 2013 WL 1163988 (D. Del. 2013); *Digital Sin, Inc. v. Does 1-176*, 279 F.R.D. 239 (S.D.N.Y. 2012); *AF Holdings LLC v. Doe,* 2012 WL 1610185 (E.D. Cal. 2012); *Canal Street Films v. Does 1-22,* 2013 WL 1775063 (M.D. Pa. 2013).

In granting a request for expedited discovery, a court may consider the necessity of additional protections to safeguard against the misuse of defendants' personal information, i.e., entry of a protective order. *Id.* at 209.

### C. *Under the Relevant Legal Standard Expedited Discovery Should Be Allowed.*

Applying the "good cause" standard to the present case, Eden Foods more than demonstrates the requisite good cause warranting expedited discovery.

#### 1. Eden Foods Has Established a Prima Facie Case for its Claims.

The Complaint alleges claims for trademark infringement, unfair competition, and trade name infringement arising under the Federal Trademark Act, 60 Stat. 427, 15 U.S.C. § 1051 *et seq.*, and the common law and statutes of the State of Delaware. The trademark infringement and unfair competition claims each provide a basis for federal question jurisdiction in this Court. "'Federal trademark infringement, 15 U.S.C. § 1114(1)(a), and a false designation of origin claim, known more broadly as federal unfair competition, 15 U.S.C. § 1125(a)(1)(A), are measured by identical standards.' Under these standards, a plaintiff must prove that: (1) it owns the mark; (2) the mark is valid and legally protectable; and (3) defendant's use of the mark to identify goods and services is likely to create confusion." *New Balance Athletics, Inc. v. USA*

*New Bunren Intl. Co. Ltd., LLC,* 424 F.Supp.3d 334, 346 (D. Del. 2019)(internal citation omitted).

Here, by demonstrating that its EDEN trademarks are federally registered and have become incontestable, Compl. ¶¶ 15-38, Plaintiff has satisfied the requirements for ownership and validity of the marks. *New Balance Athletics, Inc. v. USA New Bunren Intl. Co. Ltd., LLC,* 424 F.Supp.3d at 346 ("'If the mark at issue was federally registered and had become 'incontestable', pursuant to 15 U.S.C. §§ 1058 and 1065, validity, legal protectability, and ownership are proved.'")(internal citation omitted).

With respect to the third factor, the Third Circuit has set forth a series of factors to be considered when assessing likelihood of confusion: (1) the degree of similarity between the owner's mark and the alleged infringing mark; (2) the strength of the owner's mark; (3) the price of the goods and other factors indicative of the care and attention expected of consumers when making a purchase; (4) the length of time the defendant has used the mark without evidence of actual confusion arising; (5) the intent of the defendant in adopting the mark; (6) the evidence of actual confusion; (7) whether the goods, [even if] not competing, are marketed through the same channels of trade and advertised through the same media; (8) the extent to which the targets of the parties' sales efforts are the same; (9) the relationship of the goods in the minds of consumers because of the similarity of function; (10) other facts suggesting that the consuming public might expect the prior owner to manufacture a product in the defendant's market, or that he is unlikely to expand into that market. *VeriFone, Inc. v. Poynt Co.,* 199 F.Supp.3d 898, 905-906 (D. Del. 2016).  Notably, where the marks are identical and/or used for competing goods, the court need rarely look beyond the mark itself. *Id.* at 906.

122733003-1

Eden Salt's use of EDEN SALT to market salt products is likely to cause confusion with Eden Foods' family of EDEN marks, especially given that Plaintiff has sold salt under the family of EDEN marks for years prior to Defendant(s)' first use of the trademark EDEN SALT. Eden Foods' protected EDEN mark is included *in its entirety* as the dominant portion of the EDEN SALT mark; the remaining portion, "salt," is clearly descriptive of Eden Salt's goods and would not serve a source-identifying function. Further, Eden Salt's salt products fall within Eden Foods' broad food- and beverage-related offerings, and directly overlap with the salt products identified in Eden Foods' incontestable Reg. Nos. 1,452,337, 1,862,634, and 3,071,337. Compl. ¶¶ 15-16, 22. The foregoing, together with Eden Foods' strong and broad family of EDEN marks spanning decades of continuous use, renders confusion almost inevitable.

### 2. Eden Foods Seeks Only Limited Information Necessary to Identify and Serve the Doe Defendant(s) and Has Exhausted Other Reasonable Attempts to Obtain this Time-Sensitive Information.

In this action, all of the other factors considered by courts weigh in favor of granting the request for early discovery. The requested information is necessary in order to identify the John Doe defendant(s) properly. As discussed above, Eden Foods has exhausted alternative methods of obtaining the requested information including by researching state corporation records and available online information, and by contacting both Eden Salt and its current trademark prosecution counsel. None of these efforts have been successful, and Plaintiff does not believe there is another way to obtain the requested information. Absent relief from this Court, Eden Foods' rights, including but not limited to its ability to protect its valuable intellectual property, will be prejudiced and it may be unable to enforce and protect its trademark rights with respect to Eden Salt.

Conversely, there is no prejudice to Defendant(s) by allowing the limited proposed discovery consisting of three subpoenas seeking solely the identification of the person(s) and/or entities operating Eden Salt.  By failing to submit paperwork for the states in which they purport to transact business, the John Doe defendant(s) appear to be purposely concealing their identities.  We ask the Court to not reward such behavior.  Further, given the limited scope of the discovery sought by Plaintiff (all of which is easily accessible and would be subject to discovery in the normal course), the burden on the responding parties is extremely minimal.

In view of Plaintiff's urgent need for the requested discovery, and the limited and reasonable scope of the discovery requests, the Court should conclude that the "good cause" standard warranting expedited discovery has been satisfied.

## IV. CONCLUSION

Based on all of the foregoing, Eden Foods has demonstrated that it meets the test for granting expedited discovery for the reasons requested.  Accordingly, Eden Foods respectfully requests that its Motion be granted.

Respectfully Submitted,

**DILWORTH PAXSON LLP**

By: */s/ Thaddeus J. Weaver*
    Thaddeus J. Weaver (Id. No. 2790)
Dated:  April 6, 2022    One Customs House
    704 King Street, Suite 500
    P.O. Box 1031
    Wilmington, DE  19899
    (302) 571-8867 (telephone)
    (302) 351-8735 (facsimile)
    tweaver@dilworthlaw.com

and

**WILEY REIN LLP**

By: */s/ Christopher Kelly*
 Christopher Kelly (Id. No. 2754)
 2050 M Street, N.W.
 Washington, D.C. 20036
 (202) 719-7000 (telephone)
 (202) 719-7049 (facsimile)
 ckelly@wiley.law

*Attorneys for Plaintiff Eden Foods, Inc.*